1
2
3
4
5                   UNITED STATES DISTRICT COURT
6                   NORTHERN DISTRICT OF CALIFORNIA
7

8   CALIFORNIA SERVICE EMPLOYEES              No. C-12-1079 EMC
    HEALTH & WELFARE TRUST FUND, *et*
9   *al.*,
                                              **ORDER DENYING DEFENDANT'S**
10               Plaintiffs,                  **MOTION TO TRANSFER VENUE**

11          v.                                **(Docket No. 13)**

12  COMMAND SECURITY CORPORATION,

13               Defendants.
    _____/
14

15                      **I.    INTRODUCTION**

16          On March 2, 2012, Plaintiffs the California Service Employees Health and Welfare Trust

17  Fund, *et al.*, brought suit against Command Security Corporation, dba Aviation Safeguards, under

18  the Employee Retirement Income Security Act ("ERISA"), for collection of delinquent employee

19  health and welfare contributions.  Docket No. 1.  Pending before the Court is Defendant's motion to

20  transfer venue to the Central District of California.  Docket No. 13.  Having considered the parties'

21  arguments and submissions, and for the reasons set forth below, the Court **DENIES** Defendant's

22  motion to transfer.

23              **II.    FACTUAL & PROCEDURAL BACKGROUND**

24          The primary Plaintiff is a Trust Fund based in Alameda, California.  Compl., Docket No. 1,

25  ¶ 1.  The Fund is administered out of offices in Alameda and San Francisco, including "(a)

26  processing and maintaining records of employer remittance reports and contributions and the

27  collection of contributions in accordance with the collective bargaining agreements of participating

28  employers; (b) the proper crediting of contributions received; (c) the monitoring of any

United States District Court

For the Northern District of California

delinquencies in employer contributions; and (d) the execution of the rules and regulations of the Trust Fund and administration of the Trust Fund in conformity with the Trust Agreement under which the Trust Fund operates and the decisions of the Board of Trustees of the Trust Fund." Camanag Decl. ¶¶ 1-4.  Only one person participating in the Fund's administration maintains an office in Los Angeles.  *Id.* ¶ 3.  Employers, including Defendant, submit payments and contribution reports to the Trust Fund in the Northern District.  *Id.* ¶¶ 9, 12 & Ex. C.

Defendant is a New York corporation registered to do business in California, with an office in Los Angeles at which it was served.  *Id.* ¶ 4; Summons, Docket No. 1-1.  Pursuant to the applicable Collective Bargaining Agreement ("CBA"), Defendant began contributing to the Trust Fund for the work month of January 2010.  The CBA covers Defendant's employees at Los Angeles International Airport ("LAX"), Mineta San Jose International Airport, and Oakland International Airport.  Opp., Docket No. 16, at 1.  However, Defendant's operations in San Jose and Oakland have ceased.  Conlon Supp. Decl., Docket No. 23, ¶¶ 2-3.  In addition, the parties agree that their dispute arises solely out of Defendant's alleged failure to submit the required contributions for its employees at LAX; no other locations are implicated.  Opp. at 1; Camanag Decl., Ex. B, p. 26, App. B, § 1; Conlon Decl., Docket No. 13-1, ¶ 2.

On April 27, 2012, Defendant filed this motion to transfer venue to the Central District under 28 U.S.C. § 1404(a).  Docket No. 13.

### III.   DISCUSSION

A.   Legal Standard

Title 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  In the instant case, Defendant seeks a transfer to the Central District of California.  Plaintiffs do not dispute that the Central District of California is a district where their action might have been brought.  Opp. at 7; *see* 29 U.S.C. § 1132(e)(2) ("Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where

1    a defendant resides or may be found.").  Accordingly, the only question is whether this Court should

2    transfer the action for the convenience of parties and witnesses.

3           As to this issue, a district court has discretion in deciding whether or not to transfer.  *See*

4    *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (stating that a "district court's

5    decision to change venue is reviewed for abuse of discretion"; adding that "'[w]eighing of the

6    factors for and against transfer involves subtle considerations and is best left to the discretion of the

7    trial judge'").  The Ninth Circuit has noted that, in making the decision, a court may consider factors

8    such as:

9               (1) the location where the relevant agreements were negotiated and
                executed, (2) the state that is most familiar with the governing law, (3)
10              the plaintiff's choice of forum, (4) the respective parties' contacts with
                the forum, (5) the contacts relating to the plaintiff's cause of action in
11              the chosen forum, (6) the differences in the costs of litigation in the
                two forums, (7) the availability of compulsory process to compel
12              attendance of unwilling non-party witnesses, and (8) the ease of access
                to sources of proof.  Additionally, the presence of a forum selection
13              clause is a "significant factor" . . . .

14   *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *see also Decker Coal Co. v.*

15   *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (discussing private and public factors

16   affecting the convenience of a forum).

17          Consistent with the above, courts in this District have commonly articulated the relevant

18   factors as follows:

19              (1) plaintiffs' choice of forum, (2) convenience of the parties, (3)
                convenience of the witnesses, (4) ease of access to the evidence, (5)
20              familiarity of each forum with the applicable law, (6) feasibility of
                consolidation with other claims, (7) any local interest in the
21              controversy, and (8) the relative court congestion and time of trial in
                each forum.

22

23   *Vu v. Ortho-Mcneil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009) (Illston, J.).

24   B.     Neutral or Marginal Factors

25          Many of the above factors are essentially neutral – either because no evidence or argument

26   has been offered by either party, because the factors essentially do not weigh in favor of either side,

27   or because the factors weigh at best only marginally in favor of one side.  For example, neither party

28   has argued that one forum has more familiarity than the other does with respect to the applicable

United States District Court

For the Northern District of California

1   law.  Nor has either party pointed to another case with which this case might be consolidated.  As

2   another example, the "local interest" factor does not really weigh in favor of either side because the

3   Trust Fund is administered in the Northern District, but the Defendant and its employees–for whom

4   it has allegedly failed to contribute to the Trust Fund–are located in the Central District.  The

5   convenience of the parties is similarly neutral, as the Northern District is more convenient for

6   Plaintiffs and the Central District is more convenient for Defendant.  *See Decker Coal Co. v.*

7   *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (transfer is inappropriate when it

8   "would merely shift rather than eliminate the inconvenience").

9           Moreover, the relative court congestion between the Northern and Central District weighs

10  only slightly in favor of Defendant.  While Defendant points out that the median time from case

11  filing to trial in the Central District is 19.7 months versus 34.3 months in the Northern District, *see*

12  Mot. at 6; RJN, Ex. 1, Plaintiff contends that the more relevant comparison is the time from filing to

13  disposition, which is only 2.4 months greater in the Northern District than in the Central District.

14  Opp. at 13.  In addition, the weighted case filings and number of cases over three years old are

15  greater in the Central District, although the percentage of cases over three years old is greater in the

16  Northern District.  RJN, Ex. 1; *see Fontaine v. Washington Mut. Bank, Inc.*, CV08-5659PSGEX,

17  2009 WL 1202886 (C.D. Cal. Apr. 30, 2009) (using number of weighted fillings and percent of old

18  cases as a benchmark for congestion).  Thus, this factor is largely neutral, and at best weighs only

19  slightly in Defendant's favor.

20          Finally, ease of access to evidence weighs only marginally in favor of Defendant.  Even if

21  Defendant's documents relevant to Plaintiffs' claims are not stored electronically, *see* Mot. at 5-6;

22  Conlon Decl. ¶ 8, there is nothing to indicate that "transporting records or reducing them to

23  electronic form would cause [Defendant] significant hardship."  *Van Slyke v. Capital One Bank*, 503

24  F. Supp. 2d 1353, 1362 (N.D. Cal. 2007) (Alsup, J.).  *But see Ward v. Fluor Enterprises, Inc.*, C

25  10-04361 SBA, 2011 WL 778720 (N.D. Cal. Mar. 1, 2011) ("[T]he possibility that documents can

26  be produced electronically does not alter the conclusion that the cost of litigation will likely be less

27  if the case were venued in the forum where the evidence is located.").  Therefore, while this factor

28  favors Defendant, it is not entitled to much weight given the likelihood that the documents will need

United States District Court

For the Northern District of California

1   to be digitized at some point regardless of the forum.  See Opp. at 12 ("[Defendant] will have to scan

2   in those records for any electronic filings in either district, and it will have to copy those records for

3   production to the Trust Fund and for presentation at trial, if there is one, in either district.").

4       Thus, ultimately, the critical factors in the instant case are Plaintiffs' choice of forum and the

5   convenience of the witnesses.  The Court considers each in turn.

6   C.   Plaintiffs' Choice of Forum

7       As a general matter, a plaintiff's choice of forum should be afforded deference when a

8   district court considers a motion to transfer.  See Decker, 805 F.2d at 843.  In addition, "a plaintiff's

9   choice of forum is entitled to greater deference when [as here] the plaintiff has chosen the home

10  forum."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981) (citations omitted).  In this case,

11  Plaintiffs argue that their forum choice is entitled to a high degree of deference not only because

12  they reside in the District, but also because the allegedly delinquent payments were due to Plaintiffs

13  in the forum.  See Flexible Funding, LLC v. Iron Mountain Info. Mgmt., C 05-02082 JSW, 2005 WL

14  2431241, at *3 (N.D. Cal. Sept. 30, 2005) ("[T]he central facts in this dispute arise from alleged

15  failure to remit payments allegedly due to Flexible in California, and because Flexible is a forum

16  resident, its choice of forum is entitled to more than minimal deference.") (emphasis omitted).[1]

17      Although Defendant characterizes the central facts of this case as taking place in Los

18  Angeles because it incurred its obligations and sent (or failed to send) its payments from that

19  location, Flexible Funding indicates that the location at which the payments are due is also

20  substantially connected to the litigation.  Id. (finding that California was at the center of a dispute

21  over payments because said payments were due to the plaintiff in California, even though

22  "Flexible's right to those payments derives from its Agreement with L & L, a Massachusetts

23  company, and in turn from L & L's agreement with Iron Mountain for services provided in

24  Massachusetts"); see also DeFazio v. Hollister Employee Share Ownership Trust, 406 F. Supp. 2d

25  1085, 1089 (E.D. Cal. 2005) (rejecting the argument that Illinois was more connected to the ERISA

---

27  [1]  Plaintiffs also argue that Defendant has substantial connections with this District due to its
    operations at the San Jose and Oakland airports.  Opp. at 8.  However, Defendant clarifies that it no
28  longer operates out of these airports.  Conlon Supp. Decl. ¶¶ 2-3.  Thus, this argument is no longer
    persuasive.

dispute, and therefore plaintiff's forum choice was entitled to little weight, simply because "any breach of fiduciary duty occurred at the Libertyville, Illinois headquarters").  On the other hand, because negotiations appear to have taken place in Los Angeles and the dispute centers around contributions for employees working at LAX, Defendant is correct that Plaintiffs' choice of forum is not dispositive.  *See Joe Boxer Corp. v. R. Siskind & Co., Inc.*, C 98-4899 SI, 1999 WL 429549, at *9 (N.D. Cal. June 8, 1999) (giving plaintiff's choice of its home forum in San Francisco non-controlling weight "in the context of a dispute whose center of gravity is in New York").

In addition, Plaintiffs claim that their choice of forum receives heightened deference in ERISA cases.  *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1302 (9th Cir. 1997) *opinion amended on denial of reh'g*, 128 F.3d 1305 (9th Cir. 1997) *rev'd on other grounds*, 525 U.S. 432 (1999).  While Defendant points out that Plaintiffs' choice is not dispositive, Plaintiffs are correct that in this Circuit, "a plaintiff's choice of forum is accorded great deference in ERISA cases." *Id.*; *see also Int'l Painters & Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc.*, 357 F. Supp. 2d 54, 56 (D.D.C. 2004) ("Plaintiff's venue selection is given even *greater* deference in ERISA cases, as ERISA's special venue provision, 29 U.S.C. § 1132(e)(2), reflects Congress' intention to protect the financial integrity of such pension funds by allowing these funds to bring all collection suits in their home districts.") (emphasis in original) (citations omitted); *Int'l Painters & Allied Trades Indus. Pension Fund v. Painting Co.*, 569 F. Supp. 2d 113, 120 (D.D.C. 2008) ("If allegedly delinquent pension fund contributors ... were regularly granted venue transfers, pension funds ... would be forced to incur enormous, if not prohibitively high, expenses to collect unpaid monies-a situation Congress explicitly sought to prevent when it enacted ERISA's special venue provisions.") (citations omitted).  Indeed, many courts point out that because ERISA's venue provisions specifically allow Funds to choose whether to bring suit "where the plan is administered, where the breach took place or where a defendant resided or may be found," "that choice is entitled to our deference unless clearly outweighed by other factors." *Dugan v. M & W Dozing & Trucking, Inc.*, 727 F. Supp. 417, 419 (N.D. Ill. 1989) (quotations omitted), *cited with approval by Jacobson*, 105 F.3d at 1302.  Thus, while Plaintiffs' decision to initiate litigation in the Northern District does not

6

**United States District Court**
For the Northern District of California

1   end the inquiry, it is nonetheless entitled to deference in the Court's analysis. This factor therefore

2   weighs heavily against transfer.

3   D.   <u>Convenience of Witnesses</u>

4          "The convenience of witnesses is often the most important factor in determining a motion to

5   transfer." *Flexible Funding*, 2005 WL 2431241 at *3. Defendant argues that the convenience of the

6   parties and witnesses tilts sharply in its favor, as the central disputes are whether Defendant ever

7   entered into the Trust Agreement, what the parties negotiated with respect to the CBA, and whether

8   Defendant made the correct payments and submitted the correct reports. Mot. at 4 (citing Answer,

9   Docket No. 5, ¶¶ 9, 17; Conlon Decl. ¶¶ 2-4). Defendant contends that each of those disputes

10  centers on Los Angeles, where all of Defendant's employees reside and work, and where all of its

11  potential witnesses regarding the negotiation of the CBA and Defendant's compliance with said

12  CBA are located. Conlon Decl. ¶¶ 2-4, 8-9. Therefore, Defendant argues that the bulk of the

13  important witnesses are in the Central District. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325,

14  1335-36 (9th Cir. 1984) ("[T]he court should have examined the materiality and importance of the

15  anticipated witnesses' testimony and then determined their accessibility and convenience to the

16  forum"); *Flexible Funding*, 2005 WL 2431241 at *3 (finding convenience of witnesses favored

17  transfer based in part on the location of "witnesses who generated the invoices at issue, the

18  [Defendant's] representative who approved them, and non-party witnesses who delivered the notices

19  of assignment").

20         Plaintiffs respond that the convenience of the witnesses is less crucial in this case because

21  ERISA cases rarely go to trial, but rather are typically resolved on the papers "based on the

22  provisions of the CBA, the written remittance reports and documentary evidence of contributions

23  paid and not paid, and a written report from the Trust Fund's auditors when they have had an

24  opportunity to examine Aviation Safeguards' records." Opp. at 9-10. Plaintiffs state additionally

25  that most of the witnesses to whom Defendant points are its employees, and are therefore less

26  important under the convenience-of-witnesses analysis because Defendant can compel them to

27  testify in any forum. *See STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988)

28  ("[D]efendant's claim that defense witnesses could not be expected to appear at trial must be

1   discounted since at least four of the six witnesses are defendant's employees whom defendant can

2   compel to testify.").  It makes sense to discount this factor when the claim is only that the witnesses

3   will be inconvenienced, rather than unavailable, should the case proceed in this district.  *See also*

4   *Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009)

5   ("The court accords less weight to the inconvenience of *party* witnesses, however, as they can be

6   compelled to testify regardless of the forum in which the lawsuit is ultimately litigated.") (emphasis

7   in original) (citations omitted); *Shore to Shore Properties, LLC v. Allied World Assur.*, C 11-01512

8   JSW, 2011 WL 4344177, at *3 (N.D. Cal. Sept. 15, 2011) (same) (citations omitted).  Another

9   potential witness identified by Defendant, Mike Garcia, is a Named Plaintiff and could therefore

10  also be compelled to testify regardless of his location.

11      Plaintiffs further argue that witness testimony would be largely irrelevant in this case

12  because disputes over the validity of or performance under the CBA are not defenses to an ERISA

13  collections action.  *See* Opp. at 10-11 (citing *Sw. Administrators, Inc. v. Rozay's Transfer*, 791 F.2d

14  769, 775 (9th Cir. 1986) ("The claim that a promise to make contributions was fraudulently induced

15  is not a legitimate defense to the trust fund's action to recover delinquent contributions," but a claim

16  of fraud in the execution would constitute such a defense); *MacKillop v. Lowe's Mkt., Inc.*, 58 F.3d

17  1441, 1443 (9th Cir. 1995) ("[E]mployers are responsible for ERISA plan contributions regardless

18  of defenses challenging the validity of the underlying CBA."); *Carpenters Health & Welfare Trust*

19  *Fund for California v. Bla-Delco Const., Inc.*, 8 F.3d 1365, 1369 (9th Cir. 1993) ("[Defendant's]

20  purported termination of the CBA is not a legitimate defense to the Trust Funds' action.")).

21  Therefore, Plaintiffs contend, there will be little if any need for live witnesses at a trial.

22      The primary basis for Defendant's assertion that multiple necessary witnesses were located

23  in the Central District is its claim that it plans to raise a defense regarding the CBA's validity.

24  Defendant argues that the union is indisputably uncertified or decertified under the Railway Labor

25  Act ("RLA"), and therefore the CBA is no longer valid, based on employees' vote to decertify it in

26  December 2011.  Accordingly, it argues that the Ninth Circuit's opinion in *Sheet Metal Workers*

27  controls, which held that an employer's obligation to contribute to employee benefit plans ceased

28  when employees voted to decertify the union.  *Sheet Metal Workers' Int'l Ass'n, Local 206 of Sheet*

**United States District Court**
For the Northern District of California

1    *Metal Workers' Int'l Ass'n, AFL-CIO v. W. Coast Sheet Metal Co.*, 954 F.2d 1506, 1509 (9th Cir.

2    1992) ("[W]e hold that the renewal contract became void prospectively as of the decertification of

3    the Union on April 23, 1987."). The decertification was therefore a viable defense to the trust's

4    attempt to collect contributions. *Id.*; *see also Laborers Health & Welfare Trust Fund for N.*

5    *California v. Westlake Dev.*, 53 F.3d 979, 983-84 (9th Cir. 1995) ("Once the CBA was lawfully

6    repudiated, there was no longer any covered employment and thus there was no duty on Westlake's

7    part to contribute to the Trust Funds.").[2]

8            However, even assuming Defendant has a viable defense that the CBA is no longer in effect

9    because the union has been decertified, the Court is not persuaded that such a defense would require

10   extended witness testimony or other evidence that would render the Central District more

11   convenient. Decertification and other such defenses are only permissible in ERISA actions when

12   any dispute as to the CBA's validity has been resolved "and the CBA is ruled to be terminated by

13   the appropriate authority." *MacKillop v. Lowe's Mkt., Inc.*, 58 F.3d 1441, 1446 (9th Cir. 1995)

14   (citations omitted). The Ninth Circuit has explicitly considered the circumstances in which an

15   employer may properly cease payments to ERISA trust funds upon decertification of the union,

16   repudiation of the CBA, or other analogous circumstances. The court in *MacKillop* explained and

17   reconciled its prior opinions on the subject as follows:

18              Although *Rozay's Transfer* recognized that section 515 limited the
                availability of contract defenses in collection actions brought on
19              behalf of ERISA benefit plans, it also recognized that "[f]or an
                employer to be obligated to make employee benefit contributions to a
20

---

21         [2] Defendant cites to *Dula v. Calop Bus. Sys., Inc.*, in support of its argument that the union's
      uncertified status will be a defense to the Trust's ERISA action against it, and that therefore
22    witnesses in the Central District will be relevant to this action. In *Dula*, the district court found that
      SEIU lacked standing in an action against a California company that provides security services at
23    LAX. No. 2:10-cv-04091 SJO (JCGx), Docket No. 22 (C.D. Cal. July 20, 2011). Defendant had
      withdrawn recognition from SEIU and stopped providing wage and healthcare benefits after
24    receiving petitions from a majority of its employees. SEIU filed suit against Defendant for, *inter
      alia*, violations of the Railway Labor Act. The court found that the Railway Labor Act did not
25    confer a private right of action on an uncertified union, and that SEIU therefore lacked standing to
      pursue its RLA claims. *Id.* at 6-7; *see also Adams v. Fed. Exp. Corp.*, 547 F.2d 319, 321 (6th Cir.
26    1976) ("We find no express provision in the Railway Labor Act conferring a right of action on an
      uncertified Union to file suit on behalf of employees it seeks to represent."). This case is of limited
27    utility because it does not discuss the RLA's application to the Trust Fund's ability to seek
      contributions under ERISA. Accordingly, the Court focuses its analysis on the case law that
28    specifically addresses ERISA, which both parties agree is applicable to the instant case.

United States District Court

For the Northern District of California

trust fund, there must exist a binding collective bargaining agreement." 791 F.2d at 773. The issue we face is when a binding collective bargaining agreement ceases to exist. *Sheet Metal Workers'* holds that the voluntary decertification of a union by its employees ends the collective bargaining agreement, and employer obligations to the ERISA plans cease upon that event. 954 F.2d at 1509. *Westlake* holds that, in the unique circumstance of a section 8(f) pre-hire collective bargaining agreement, an employer's unilateral repudiation of such agreement under the one-employee unit rule renders the agreement void, and the obligation to the ERISA benefit plan also ceases upon repudiation. 53 F.3d at 984. As a general proposition, however, unilateral action of an employer will not render a CBA void and unenforceable, nor will the mere assertion by the employer that the union lacks majority status. *Sheet Metal Workers'*, for example, distinguished an "employer's after-the-fact attempt to extricate itself through unilateral action from trust fund obligations that it knowingly accepted," and noted that "[a]t the time the 1986 [CBA] was imposed, [the employer] had no way of being certain that the union would lose its majority status." 954 F.2d at 1510. Where there are grievance and arbitration procedures under the CBA, as in *Bla-Delco*, the obligation to make contributions to the ERISA plans continues until those procedures are followed and the CBA is ruled to be terminated by the appropriate authority. *See Bla-Delco*, 8 F.3d at 1369. Similarly, in our case, where an NLRB action had been initiated to determine whether the CBA was invalid for lack of majority status, the employer's obligations to the Plans continued until the NLRB ruled that the CBA had no force and effect.

*MacKillop*, 58 F.3d at 1445-46. The final two sentences of the above language from *MacKillop* are crucial: where there are ongoing disputes as to the CBA's validity, the employer's obligations to the Trust Funds continue unabated until the issue is adjudicated.

In the instant case, Defendant has presented no evidence that the CBA has been adjudged void or that the union has been officially decertified under the RLA. Rather, the record before the Court indicates Defendant merely asserts that a majority of employees have voted to decertify it, and that it sent a letter to the union repudiating the CBA on that basis. *See* Plaintiff's June 8, 2012 Letter, Ex. B, Conlon Decl., Att. A (December 29, 2011 Letter from Defendant's Regional Vice President Joe Conlon to SEIU stating that the company was withdrawing recognition from the union after receiving an employee decertification petition). However, Plaintiff has provided documents to the Court indicating that questions of whether the union has actually been decertified, whether a majority of employees actually voted to decertify it, whether the employer was permitted to unilaterally withdraw recognition from the union, and whether such a vote actually renders the CBA invalid and the union barred from representing the employees remain hotly disputed before the

National Mediation Board ("NMB"), the body that adjudicates representational disputes under the RLA.  *See* Plaintiff's June 8, 2012 Letter, Docket No. 29, Exs. A-C (attaching documents filed with the NMB by the union and Defendant disputing the above questions and others); *see generally Hunter v. Nat'l Mediation Bd.*, 754 F.2d 1496, 1498 (9th Cir. 1985) ("NMB's statutory mandate is to investigate representation disputes and to certify designated employee representatives.") (citing 45 U.S.C. § 152 Ninth)).

In contrast to the record described above, in the primary case to which Defendant cites for support, *Sheet Metal Workers*, a properly decertified union and the involved parties did not dispute the decertification.  *See Sheet Metal Workers*, 954 F.2d at 1509 ("[W]e hold that the renewal contract became void prospectively as of the decertification of the Union on April 23, 1987.") (citing *Sheet Metal Workers Int'l Ass'n, Local No. 162 v. Jason Mfg.*, 900 F.2d 1392, 1399 (9th Cir. 1990) (describing "decertification of the union *by the NLRB*" as occurring through the Board's official action on a subsequent date from the date on which the employees had held a decertification election) (emphasis added).  If, unlike in *Sheet Metal Workers*, there is an ongoing dispute over the decertification or the validity of the CBA, the employer cannot unilaterally cease payments to the Trust Fund.  *See MacKillop*, 58 F.3d at 1446 ("[U]nilateral action of an employer will not render a CBA void and unenforceable, nor will the mere assertion by the employer that the union lacks majority status.").  Instead, "the employer's obligations to the Plans continue[] until the [proper authority] rule[s] that the CBA ha[s] no force and effect."  *Id.*  Thus, on the record currently before the Court, Defendant would not be able to raise union decertification or CBA invalidity as a defense merely on the basis of an ongoing, unresolved dispute.  *See Bla-Delco*, 8 F.3d at 1369 ("The dispute centers on whether Bla-Delco effectively terminated the CBA.  Consequently, the CBA was not 'void,' but merely 'voidable,' and therefore, Bla-Delco's purported termination of the CBA is not a legitimate defense to the Trust Funds' action.").

More importantly for the instant motion, even if Defendant did have and produce evidence that the union had been lawfully decertified and the CBA lawfully rendered void as of the date of decertification, such a defense would not be likely to require multiple witnesses from outside this District.  Rather, it would likely involve judicially noticeable documents demonstrating that the

union became decertified – and hence the CBA no longer operable – as of a certain date.  However, Ninth Circuit case law is clear that as long as there are merely disputes as to the continuing validity of a CBA, such disputes are not properly injected into an ERISA action.  Plaintiff's materials submitted to the Court demonstrate the dispute between the union and Defendant as to whether employees have actually withdrawn majority support and decertified the union will be resolved through other channels that are not currently the Court's concern in the instant action.

In short, the putative defense does not imply the convenience of relevant witnesses weighs in favor of transfer to the Central District.

## IV.   CONCLUSION

Given the above factors, the Court cannot conclude that Defendant has "ma[d]e a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker*, 805 F.2d at 843.  Accordingly, the Court **DENIES** the motion to transfer venue.

This order disposes of Docket No. 13.


IT IS SO ORDERED.


Dated:  July 10, 2012

_____
EDWARD M. CHEN
United States District Judge